**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **WILLIAM CUNNINGHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **PENSKE LOGISTICS LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff William Cunningham ("Cunningham" or "Plaintiff"), by and through undersigned counsel, and submits his Complaint against Defendant Penske Logistics LLC ("Penske" or "Defendant"), stating as follows:

### NATURE OF COMPLAINT

1.

Cunningham brings this action against Defendant for interference and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §2601, et seq. ("FMLA") and retaliation in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617, and 28 U.S.C. § 1343 because this is a civil action arising under the FMLA and Section 1981.

2.

Venue is proper in this district under 28 U.S.C. § 1391 because Penske resides in Duluth, GA (Gwinnett County) and is subject to the court's personal jurisdiction with respect to this civil action.

## PARTIES

3.

Cunningham is an African American male who resides in Stone Mountain, Georgia. Cunningham is subject to the jurisdiction of this Court.

4.

At all times referenced herein, Cunningham was an "eligible employee" as defined under the FMLA because he (1) had been employed by Penske for at least 12 months; (2) had been employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of his FMLA leave; and

(3) was employed at a worksite where the employer had at least 50 employees within 75 miles.

5.

Penske is a limited liability company qualified and licensed to conduct business in Georgia. Penske has conducted business within this district at all times material hereto.

6.

Penske is a private-sector employer with 50 or more employees in 20 or more workweeks in the current or preceding calendar year. Accordingly, it is a "covered employer" as defined under the FMLA.

7.

Penske may be served with process through its registered agent, Corporation Service Company, located at 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

**FACTS**

8.

Cunningham began working for Defendant in September of 2018 as Operations Supervisor.

9.

As such, he was responsible for managing and supervising approximately 20 drivers who were assigned to Defendant's logistics contract with client Yamaha.

10.

Throughout his tenure with Defendant, Cunningham was a model employee with no record of any performance, attendance, or disciplinary issues whatsoever. He was a well-respected supervisor and well versed in the company's policies and procedures.

11.

In or around September of 2020, Cunningham's General Manager, Shane Head, made a racially charged comment to Cunningham and another manager that offended Cunningham, who was the only African American employee in the office.

12.

Cunningham made it clear to Head that he did not appreciate the comment and found it offensive.

13.

Shortly thereafter, the human resources department launched an investigation into the incident and asked Cunningham to submit a statement.

14.

Cunningham complied with the request and submitted a statement on September 25, 2020, which summarized different times that Cunningham experienced racism in the workplace.

15.

Approximately three weeks later, Shelly Moore in the human resources department informed Cunningham that it would close its investigation and would take no further action related to the incident.

16.

On October 10, 2020, Cunningham's wife ("Mrs. Cunningham") gave birth to a baby girl.

17.

Approximately two weeks after the birth of Cunningham's daughter, Mrs. Cunningham was diagnosed with post-partum depression and was unable to independently care for herself or their newborn child.

18.

Cunningham consequently requested time off from work to care for his newborn child, wife, and two other children.

19.

Cunningham initially used two weeks of accrued PTO, which covered his absences through October 26, 2020.

20.

On October 23, 2020, Cunningham applied for an additional twelve weeks of unpaid FMLA leave from October 26, 2020 until January 17, 2021.

21.

Cunningham also notified his immediate supervisor, Tiffany Ary, that he was requesting FMLA leave for twelve weeks.

22.

Cunningham provided sufficient information about the reason for his requested leave to alert Defendant that he was eligible for two separate qualifying reasons: (1) to care for and bond with his newborn child, and (2) to care for a spouse with a serious health condition.

23.

On November 2, 2020, Cunningham received correspondence from Defendant's FMLA vendor, "FMLASource," which stated that a physician certification was due November 10, 2020.

24.

Cunningham requested and received an extension of the deadline for the certification because the FMLA coordinator at Mrs. Cunningham's physician's office was on vacation at the time.

25.

Nevertheless, on November 11, 2020, Cunningham received correspondence from FMLASource indicating that the FMLA application had been denied because Cunningham had not provided a physician certification.

26.

On November 13, 2020, Cunningham called FMLASource and specifically asked if it had received the certification from the physician yet ("I was calling to see if the doctor had faxed over the paperwork yet?"). The FMLASource representative responded: "yes, so, it looks like we received paperwork on the 11th. We are still processing that and as soon as a decision is determined we will notify you via email."

27.

During the same call, Cunningham mentioned that he had received correspondence from FMLASource a couple of days prior indicating that the application had been denied. The FMLASource representative instructed Cunningham to disregard the correspondence and assured Cunningham that the

decision would be updated now that they had received the paperwork from the physician.

28.

Cunningham called FMLASource once again on November 20, 2020, to confirm that his FMLA leave had been approved. During the call, FMLASource told him that he had been approved for FMLA leave from October 26, 2020, until January 15, 2021. The representative told him that January 16-17, 2021 (a Saturday and Sunday) had been denied "per HR," presumably because Cunningham did not work on weekends.

29.

The representative clarified: "so you are covered through the 15th, which is a Friday, and then you'll be expected to return back the next Monday, January 18th . . . You'll receive an email later today or first thing tomorrow morning clarifying that."

30.

During the November 20 call, Cunningham told the FMLASource representative that he had previously been told his FMLA application was "approved *pending*." He asked the representative what "pending" meant.

31.

The representative clarified that the application was "pending" while FMLASource awaited a response from Defendant's HR department; however, FMLASource had now received that response. Thus, he continued: "now that we have received it, **it's no longer pending. It's just approved**." (Emphasis added.)

32.

Before concluding the call, the FMLASource representative reiterated—once more—that the application was approved for the dates October 26, 2020 until January 15, 2021, and denied for the weekend of January 16-17, 2021.

33.

Later that day, November 20, 2020, Cunningham received a formal notice from FMLASource unambiguously stating that Cunningham had been <u>approved</u> for FMLA leave from October 26, 2020 until January 15, 2021, and denied leave for January 16-17, 2021. A true and correct copy of the November 20, 2020 approval letter is attached hereto as Exhibit A.

34.

The November 20 approval notice specifically states that the FMLA determination was "based on certification completed by your healthcare provider." *See* Ex. A.

35.

Cunningham reasonably and justifiably relied on FMLASource's representation that (1) the physician certification had been received and (2) Cunningham had received final approval of his request for FMLA leave from October 26, 2020 until January 15, 2021.

36.

Accordingly, he turned his attention to his wife and newborn child, both of whom relied on him for care and assistance (the very purpose of the leave).

37.

On January 6, 2021, Cunningham received a letter from Defendant dated January 5, 2021, which stated that his employment had been terminated due to unexcused absence ("Termination Letter"). The Termination Letter falsely alleges that two prior letters were mailed to Mr. Cunningham on November 11, 2020, and December 3, 2020, informing him that his FMLA had only been approved through November 21, 2020, and that any absence accrued thereafter was unexcused.

38.

Cunningham was shocked and confused by the Termination Letter, as he had been repeatedly told by FMLASource on November 20, 2020—both over the phone

and via formal written correspondence—that he had been unconditionally approved for FMLA leave through January 15, 2020.

39.

The Termination Letter conveniently makes no mention whatsoever of the November 20, 2020 approval notice that was issued to Cunningham and which listed the approved FMLA dates as October 26, 2020 - January 15, 2021.

40.

Cunningham immediately called FMLASource on January 6, 2021, after receiving the Termination Letter to clear up any confusion. On the call, Mr. Cunningham learned—for the very first time—that his wife's physician had listed the FMLA end date as November 21, 2020, on the certification faxed to FMLASource, not January 17, 2021 (as Mr. Cunningham had requested).

41.

FMLASource had apparently sent him an email on December 3, 2020 that listed different dates of approval, with November 22, 2020 as the end date of the approved FMLA leave. However, Cunningham had not seen the email because by that point he was already on approved FMLA leave and thus was focused on caring for his wife and child.

42.

At no point during the period that Cunningham was allegedly on unauthorized leave did Defendant try to contact Cunningham to make sure he was aware of the alleged issue with his FMLA application or to see if he—a supervisor—was planning on returning to work.

43.

Nor did Defendant issue Cunningham any kind of warning or progressive discipline for the alleged unexcused absence.

44.

Instead, Defendant waited six weeks to unceremoniously terminate him for alleged unexcused absence (of which Cunningham had no knowledge).

45.

During the January 6, 2021, phone call with FMLASource, FMLASource told Cunningham that the Company may reconsider the termination if he submitted a new physician certification with a revised end date.

46.

Cunningham immediately contacted his wife's physician about getting a new FMLA certification.

47.

Cunningham then attempted to get ahold of Defendant's HR department to explain the confusion. After a few missed calls back and forth, Cunningham sent the following email to the Director of Human Resources, Peg Neily, on January 12, 2021:

*Hey Mrs. Peggy,*

*We kept missing each other's phone call. The reason for my call was I was not aware I was on unapproved leave. I was told from FMLA that I was approved until January the 15th. I did not receive the letters any letters stating different. However, I did call FMLA Wednesday evening January 6 after receiving the termination letter and they told me to get the certification filled out by my wife's doctor and submit it back to them.. I did drop it off to my wife's doctor on Thursday January 7th. My question to you is am I still considered terminated even after they receive the approved certification from my wife's doctor?*

48.

While Cunningham awaited a response from Defendant, his wife's physician faxed an updated FMLA certification to FMLASource on January 13, 2021, which extended Cunningham's FMLA leave from November 21, 2020, through January 15, 2021.

49.

Defendant refused to accept the updated physician certification.

50.

Instead, Ms. Neily emailed Cunningham to let him know that the decision to terminate him would stand notwithstanding the new certification "[b]ased on the documented correspondence history and the subsequent failure to meet [his] obligations to respond and substantiate, in a timely fashion as defined by FMLA rules, the need for FMLA leave."

51.

Notably, Defendant knew that Cunningham was eligible for FMLA leave based on two separate and independent reasons: (1) the birth of his child, and (2) the serious health condition of his wife.

52.

Only one of the qualifying reasons (the serious health condition) requires a physician certification.

53.

Thus, regardless of any alleged issues with the physician certification, Cunningham was legally entitled to 12 weeks of leave to care for and bond with his newborn child.

54.

Defendant knowingly disregarded and acted in direct violation of

Cunningham's rights under the FMLA when it terminated him on January 5, 2021 and failed to provide him the 12 weeks of FMLA leave to which he was legally entitled.

55.

The Company's proffered reason for Cunningham's termination was pretextual.

56.

Cunningham has suffered significant damages, including but not limited to loss of pay, as a result of Defendant's unlawful actions.

**COUNT I – FMLA Interference**

57.

Cunningham repeats and realleges the preceding paragraphs as if fully set forth herein.

58.

Cunningham was an eligible employee under the FMLA.

59.

Defendant is a covered employer under the FMLA.

60.

Cunningham was entitled to twelve weeks of FMLA leave to care for and bond with his newborn child.

61.

Cunningham was entitled to FMLA leave for the additional qualifying reason that he had to care for an immediate family member (spouse) with a serious health condition (post-partum depression).

62.

Cunningham sought leave to care for his newborn child and wife.

63.

Cunningham gave adequate notice of his intention to take leave as required by FMLA.

64.

Cunningham provided sufficient information about the reason for his requested leave to alert Defendant that he was eligible for two separate qualifying reasons: (1) to care for and bond with his newborn child, and (2) to care for a spouse with a serious health condition.

65.

After representing to Cunningham that he had been unconditionally approved

for FMLA leave until January 15, 2021, Defendant cut Cunningham's leave short and terminated him in violation of the FMLA on January 5, 2021.

66.

Defendant improperly interfered with and denied Cunningham benefits under the FMLA to which he was entitled, including the right to take qualifying leave and to be returned to his position upon the conclusion of the leave.

67.

As a direct and proximate result of Defendant's wrongful acts and omissions, Cunningham has suffered and continues to suffer substantial losses, including past and future lost wages and benefits.

## COUNT II – FMLA Retaliation

68.

Cunningham repeats and realleges the preceding paragraphs as if fully set forth herein.

69.

Cunningham was an eligible employee under the FMLA and qualified for his position.

70.

Defendant is a covered employer under the FMLA.

71.

Cunningham exercised his FMLA rights by requesting and taking FMLA leave to care for his newborn child and spouse.

72.

Defendant subjected Cunningham to a materially adverse action when it terminated him on January 5, 2021, for exercising his rights under the FMLA.

73.

There is a causal connection between Cunningham's exercise of his rights under the FMLA and the subsequent adverse action (termination).

74.

Defendant's proffered reason for the termination is false and mere pretext for retaliation.

75.

As a direct and proximate result of Defendant's wrongful acts, Cunningham has suffered and continues to suffer substantial losses, including past and future lost wages and benefits.

**COUNT III – Section 1981 Retaliation**

76.

Cunningham repeats and realleges the preceding paragraphs as if fully set

forth herein.

77.

Cunningham's complaints and opposition to race discrimination in the workplace constituted protected activity under Section 1981.

78.

Defendant subjected Cunningham to a materially adverse action when it terminated him for engaging in such protected activity.

79.

There was a causal connection between the protected conduct and the termination.

80.

Defendant's proffered reason for the termination is false and mere pretext for retaliation.

81.

As a direct and proximate result of Defendant's wrongful acts, Cunningham has suffered and continues to suffer substantial economic and non-pecuniary damages.

82.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its

actions toward Cunningham were undertaken in bad faith.

83.

Cunningham is entitled to punitive damages, lost wages and benefits, front pay, compensatory damages, attorney fees and costs, prejudgment interest, and any other relief available under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

a) Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character or reputation, injury to credit standing, loss of health, and any other non-pecuniary losses incurred as a result of the discriminatory conduct;

b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts;

c) Past and future lost wages and benefits, plus interest;

d) Liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

e) All costs and reasonable attorneys' fees incurred in connection with this action; and

f) Such additional or alternative relief as the Court deems just and proper

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Date: February 25, 2021

Respectfully submitted,

**BERGMAR LAW LLC**

*/s/ Nina Maja Bergmar*
Nina Maja Bergmar
Georgia Bar No. 982879
135 Auburn Ave. NE, Unit A
Suite 210
Atlanta, GA 30303
nmb@bergmarlaw.com
Tel. (470) 239-2096
Fax. (404) 806-8696

Attorney for Plaintiff

# EXHIBIT A



455 N. Cityfront Plaza Drive, 13th Floor
Chicago, IL 60611-5322
Phone: 888-808-1851
Fax: 888-808-1878

www.FMLASource.com

Attn: Penske Truck Leasing

Leave Request # 3210001

11/20/2020

William Cunningham

Dear William,

This letter confirms decisions made regarding your recent request(s) for leave from your position at Penske Truck Leasing for the care of your family member. The following are the most recent decisions for your current leave request and are based on certification completed by your healthcare provider:

Below you will see detail around the requested time.

- Details may relate to your recent request and/or from previously-requested time, and may include dates that are already approved.
- The time requested may be denied, pending or approved. The categories below will explain which parts of your requested leave are in which status.
- There are different leave laws, regulations or plans that apply to the time you requested. These are noted in the "Applicable Leave Plan(s)" boxes. Note that the time may apply under one or more of the laws, plans, etc.

**The following dates are approved:**

| On Continuous Leave | Beginning on 10/26/20 | Ending on 1/15/21 |
|---|---|---|
| Decision = Approved | Decision Reason = | |
| Estimated frequency of absence: On a continuous basis | | |
| FMLA entitlement exhausts after 01/15/2021. | | |
| Applicable Leave Plan(s): FMLA | | |

**The following dates are denied:**

| On Continuous Leave | Beginning on 1/16/21 | Ending on 1/17/21 |
|---|---|---|
| Decision = Denied | Decision Reason = Leave not Approved by HR Department | |
| Applicable Leave Plan(s): Personal Leave | | |

## What You Need To Know

Based on the continuous and/or reduced leave(s) approved above, the anticipated amount of entitlement used for this leave will be: 12.00 weeks (480.00 hours) for this request.

Personal Leaves are not job protected.  If an associate does not return as expected from Personal

Leave, the employment will not be protected and may be subject to attendance points per Penske's policy. If you require additional time, you must call to request an extension at one week before exhaustion of your current leave.

The Family and Medical Leave Act (FMLA) allows eligible employees up to a total of 12 weeks of unpaid leave in a 12-month period for certain qualifying reasons. If your leave is approved and you have FMLA time available, you will be entitled to job protection under the FMLA for the dates listed above (see "beginning on" and "ending on") and your time off work will reduce your available FMLA balance. Your employer will maintain your health benefits under the same conditions as if you continued to work. If you do not return to work following FMLA for a reason other than (1) the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA; or (2) other circumstances beyond your control, you may be required to reimburse your employer for their share of health insurance premiums paid on your behalf.

If your leave is supplemented by a pay replacement benefit (for example short term disability, worker's compensation and/or paid time off) that benefit will run concurrently with your leave.

## What You Need To Do

If, for any reason, your condition or status changes significantly while on FMLA, please notify FMLASource immediately (toll free) at 888-808-1851.

Should you have any questions, please contact FMLASource by sending an email to FMLACenter@FMLASource.com or call us toll free at 888-808-1851. Please reference your leave request number # 3210001 when you contact us. You may also find information and review your leave status on our website at www.FMLASource.com. To access your record, please visit our website and create a username and password. You must have your employee ID number and the postal code (30087) on file with your employer to register. We are working to provide you with excellent service during your leave.

Best Regards,

FMLASource